IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORMA S. DELGADO, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 11 C 2849 |
| v. | ) | |
| | ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, Commissioner | ) | Magistrate Judge |
| of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Norma S. Delgado ("Claimant") brings this action seeking review of the decision by Respondent Michael J. Astrue, Commissioner of Social Security ("Commissioner"), in which the Commissioner denied Claimant's application for Supplemental Security Income ("SSI") under Section 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. § 1382c(a)(3)A). This matter is before the Court on Claimant's motion for summary reversal or remand [Dkt.#19]. Claimant argues that the Commissioner's decision is not supported by substantial evidence and is contrary to the legal standard for determining disability set forth in the federal regulations. Claimant raises the following issues in support of her motion: (1) whether the ALJ failed to address evidence regarding Claimant's mental impairments from her treating psychiatrist Dr. Cruz and (2) whether the ALJ erred in finding Claimant less than credible. For the reasons explained in this Memorandum Opinion and Order, Claimant's motion is granted

in part and denied in part, and the case is remanded to the Social Security Administration for further proceedings pursuant to this opinion.

# I. BACKGROUND

## A. Procedural History

Claimant initially filed for SSI on March 31, 2008, alleging a disability onset date of April 13, 2006 due to depression and injury to her feet and ankles. R.10, 90, 108. The Social Security Administration ("SSA") initially denied her application on May 20, 2008, and again upon reconsideration on August 8, 2008.  R.38-39.  On November 18, 2009, Claimant appeared before Administrative Law Judge ("ALJ") John L. Mondi.  R.7-16. Only Claimant, who was unrepresented, and her sister-in-law testified at the hearing. R.10.  No medical or vocational experts were heard.  On January 14, 2010, the ALJ rendered a decision finding that Claimant was not disabled under the Social Security Act. R.16.  The ALJ determined that Claimant had not engaged in substantial gainful activity ("SGA") since March 31, 2008; that she had severe physical impairments, but could ambulate effectively; that she did not have a severe mental impairment; that she had the residual functional capacity ("RFC")[1] to perform the full range of sedentary work; and that she was unable to perform any past relevant work, but could perform a significant number of jobs in the economy. R.13-16.  On March 2, 2011, the Appeals Council denied Claimant's request for review, making the ALJ's decision the final decision of the

---

[1] The RFC is the most that a claimant can do despite the effects of her impairments. 20 C.F.R. 404.1545(a).

Commissioner. R.1.  On September 19, 2011, Claimant filed this action for review

pursuant to 42 U.S.C. § 405(g).

### B.  Hearing Testimony – November 18, 2009

#### 1.  Claimant Norma S. Delgado

At the time of the hearing, Claimant was 34 years old and single with three

children, ages 4, 10, and 12.  R.29. Claimant completed school through the 8th grade and

was working on her GED at the time of the hearing. *Id*. She had past work experience as

a babysitter and a host at IHOP.  R.30.  She also had been a cashier, waitress, and press

operator. R.31.  Claimant testified that her job at IHOP ended after a month because it

was hard to be on her feet for long periods of time. *Id*.

On April 13, 2006, when Claimant alleged her disability began, she went to the

hospital because of pain that spread from her foot to her knee. R.31.  Claimant testified

that she can walk half a block before she starts to experience pain. R.32.  Due to her

difficulty climbing stairs, she moved to a first floor residence. R.32-33. Claimant wears

braces on both feet when she drives or is in severe pain.  R.33.  She also had to wear a

boot for three weeks. *Id*.  Claimant testified that she has fallen twice because of her

ankles.  *Id*.[2]

In addition to pain in her feet, Claimant suffers from anxiety and depression. R.32,

33.  She takes Lexapro for depression, Metadate for anxiety, and Lunestra to help her

---

[2] When Claimant was six or seven years old, she had casts placed on both of her feet that reached her hips.  R.31.  When she was 10 years old, her feet were operated on for "overbone and flat feet."  *Id*.

sleep. R.33. Side effects from the medications include drowsiness. *Id*. For pain, she takes ibuprofen and Tylenol, and the doctor gives her shots in her ankles. *Id*.

Claimant testified that she needs help with groceries and maintaining the house. R.34. Rather than walk, she drives three minutes to the closest stores. *Id*. Claimant's sister-in-law assists Claimant with her grocery shopping. *Id*. 34-35. Claimant stated that her condition has been the same for a year-and-a-half; she is in pain every day from the time she awakes. R.35. According to her doctor, there is a 50 percent chance that she would get better from surgery, which Claimant has not chosen to undergo. *Id*.

### 2. Claimant's sister-in-law Irma Munoz

Mrs. Munoz testified that she assists Claimant two or three times a week by helping her around the house and with the children. R.36. She stated that she believes Claimant's pain and depression are getting worse. *Id*.

### C. Medical Evidence

### 1. MacNeal Hospital and Mercado Foot & Ankle Clinics South

On November 19, 2007, Dr. Patricia Gavin saw Claimant at the MacNeal Hospital for her bilateral foot pain and noted that Claimant had flattening of both feet. R.160. Dr. Gavin found that no hallux valgus deformity was demonstrated and bones and joint spaces otherwise appeared "unremarkable". *Id*.

Dr. Shaffer of Mercado Foot & Ankle Clinics South saw Claimant on November 27, 2007. R.162. Dr. Shaffer diagnosed Claimant with shin splints, right ankle pain tendinitis and plantar fasciitis. *Id*. He ordered physical therapy three times a week for three weeks. *Id*.

Claimant returned to MacNeal Hospital on December 12, 2007 for a physical therapy evaluation. R.163. Fan Chin Tsai noted that Claimant had extreme pronated feet and decreased stability. *Id*. While she had been experiencing pain, she had no weakness in her ankle muscles. *Id*. Claimant was prescribed physical therapy three times a week for six weeks. *Id*. On December 27, 2007, Claimant's records show that she had received relief from ultrasound, and it was recommended that this modality be continued. R.171. Claimant's physical therapy records from January 7 and 15, 2008 read that Claimant had not been doing her exercises because she had to care for her children and study for the GED. R.175. She also needed re-instruction to do certain stretches correctly. *Id*. On January 15, 2007, the records note that Claimant had missed several appointments due to childcare. R.170.

On January 29, 2008, Claimant returned to Mercado Foot and Ankle Clinics South. R.182. Voltaren was prescribed, and a MRI was scheduled. *Id*. On February 12, 2008, a MRI was taken of Claimant's right ankle, which revealed findings compatible with sinus tarsitis syndrome. R.177. The report indicates that the remainder of the examination was unremarkable. *Id*. On February 14, 2008, a MRI of her left ankle was taken and showed findings suggestive of tibialis posterior tendon dysfunction, although there was no tibialis posterior tendon tear. R.178. Claimant also had low-grade tibiotalar capsulosynovitis, but no osteochondral erosion, stress fracture or substantive arthropathy. *Id*. On February 28, 2008, Claimant reported having decreased pain in her right foot, although she had not been going to physical therapy. R.181. She did stretching at home and only took Voltaren when it "hurts bad". *Id*.

### 2. Dr. Cruz—Access Community Health Network

On January 10, 2008, Claimant had an initial intake at Access Community Health Network for her depression. R.232-34. She had a Global Assessment of Functioning ("GAF") score of 65, which indicates only mild symptoms or limitations.[3] R.233. On March 13, 2008, Claimant was seen by Dr. Cruz. R.188, 230. Claimant reported a long-standing history of depression, and rated her current level of depression as a nine out of ten, ten being the worst. *Id*. Claimant listed a history of physical and sexual abuse, gang involvement, prostitution, and use of crack cocaine and marijuana. *Id*. Claimant had been seen by a psychiatrist when she was pregnant with her daughter and was prescribed Zoloft, although she never took the medication. *Id*. She reported no past psychiatric hospitalizations and no suicide attempts. *Id*.

Dr. Cruz diagnosed Claimant with major depression, both recurrent and severe; an anxiety disorder; and a history of cocaine dependence. R.189. Dr. Cruz prescribed Lexapro, Lunestra, and individual therapy. *Id*. When Claimant returned on April 17, 2008, Dr. Cruz reported major depression—moderately severe—and anxiety. R.190, 229. Dr. Cruz increased the Lexapro dose and decreased Lunestra. *Id*. On June 19, 2008, Dr. Cruz reported few improvements in Claimant's symptoms and added a diagnosis of PTSD and a prescription for Wellbutrin. R.218.

---

[3] The GAF Scale reports a clinician's judgment of an individual's overall level of functioning and is used in planning, measuring the impact, and predicting the outcome of treatment. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000)("DSM-IV-TR"). GAF scores from 41-50 indicate serious symptoms or impairments, including suicidal ideation, no friends, and inability to hold a job. DSM-IV-TR at 34. GAF scores from 51-60 indicate moderate symptoms, and scores from 61-70 indicate mild symptoms. *Id*.

On July 24, 2008, Claimant had a follow-up appointment. R.214. Dr. Cruz again noted that Claimant had not experienced any improvements in symptoms. *Id*. Claimant reported being unable to focus well, easily distracted, and extremely forgetful. *Id*. She was struggling in school. Dr. Cruz discontinued Claimant's Wellbutrin and added a diagnosis of ADHD and a prescription for Ritalin. *Id*. Dr. Cruz noted that Claimant's disability had been denied and that she planned to appeal the decision. *Id*. Partially dated progress notes from Dr. Cruz, beginning on December 12, 2008 and ending shortly after July 9, 2009, note varying levels of depression and include the additional diagnosis of a cognitive disorder, not otherwise specified. R.240-43.

### 3. Access Community Health Network

Claimant was seen again for pain in her feet at Access Community Health on June 2, 9, 19, 23, and July 7 and 11, 2008 and reported little improvement. R.225, 222, 219, 216, 215. On June 2 and 7, 2008, Claimant also reported back pain. R.224, 216. In her back pain screening on June 2, she reported the following: that the pain comes and goes and is moderate; that washing and dressing increase the pain and she finds it necessary to change her way of doing them; she can only lift very light weights at the most; she cannot walk at all without increasing pain; she can sit only in her favorite chair as long as she likes; she avoids standing because it increases the pain immediately; pain prevents her from sleeping at all; pain has restricted her social life and she does not go out very often; she gets extra pain while traveling which compels her to seek alternative forms of travel; and her pain is rapidly worsening. *Id*.

### 4. Dr. Albert — Mount Sinai Hospital Medical Center

On June 2, 2008, due to pain in the top of her feet, Claimant had a consultation

with Dr. Anne Albert of Mount Sinai Hospital. R.220. Claimant reported to Dr. Albert

that surgery had not been recommended, and she denied numbness, tingling, radiating

pain, or weakness. *Id*. She evaluated her pain as a 6 out of 10 on a pain scale with 10

being the worst. *Id*. Dr. Albert noted that Claimant had fractured her right ankle about 13

years prior, but had no pain until two years ago and no recent trauma. *Id*. She noted that

Claimant's bilateral ankle range of motion was full and without pain, and there was no

warmth, redness or swelling. *Id*. Dr. Albert evaluated her condition as worsening. *Id*.

Dr. Albert recommended treatments of heat and ice as well as acupuncture. R.221.

### 5. Dr. Panepinto — Physical Residual Functional Capacity Assessment

On May 5, 2008, state agency medical consultant Dr. Marion Panepinto provided

his medical opinion as to Claimant's physical residual functional capacity ("RFC").

R.191-98. Dr. Panepinto's report indicates that Claimant has sinus tarsitis on the right

foot and tibial tendon dysfunction on the left foot, but that she could still do many

activities of daily living. R.191, 198. He found that Claimant could occasionally lift

and/or carry 50 pounds and frequently lift and/or carry 25 pounds. *Id*. He also noted that

Claimant could stand and/or walk as well as sit (with normal breaks) for about six hours

in an eight-hour day. *Id*. Lastly, Claimant's ability to push and/or pull (including

operation of hand and/or foot controls) was found to be unlimited. *Id*. Claimant's only

other limitation was that she could occasionally climb a ramp/stairs and

ladder/rope/scaffolds. R.193. Dr. Panepinto noted no further limitations. R.191-98. He reported that Claimant indicated that she had not been doing physical therapy recently, but did some stretching at home. R.198.

### 6. Dr. Kuester — Psychiatric Review Technique

State agency consultant Dr. Elizabeth Kuester prepared a Psychiatric Review Technique Form on May 16, 2008. R.199-212. Dr. Kuester opined that Claimant's mental impairments, which consisted of depression and anxiety, were not severe. R.199, 202, 204. Claimant's functional limitations were mild with regard to: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. R.209. In her field office observations, Dr. Kuester noted no mental limitations, stating that Claimant lived in and maintained an apartment, took care of three children, handled finances, used a computer, and took GED classes. R.211. While she was depressed at times, she usually got in a better mood "pretty soon and usually does what she needs to do." *Id*. Dr. Kuester assessed Claimant's credibility as fair, noting that she "just started OP Psych TX, and applied for disability soon after . . . CL is quite functional per ADLS". *Id*.

### 7. Dr. Arjmand and Dr. Havens — Illinois Request for Medical Advice

On August 6 and 7, 2008, consultants Dr. Ronald Havens and Dr. Towfig Arjmand affirmed the findings from May 2008 that Claimant's anxiety, depression, and ankle and feet pain did not significantly limit her functioning. R.235-37. Claimant was

reported to be credible in terms of her symptoms, but not in terms of the severity of her impairments/limitations. R.237.

### D. The ALJ's Decision — January 14, 2010

After a hearing and review of the medical evidence, the ALJ determined that Claimant has the RFC for the full range of sedentary work[4] and thus is not disabled, as defined under the Social Security Act. R.16. The ALJ therefore denied her application for SSI. *Id.* The ALJ evaluated Claimant's application under the required five-step sequential analysis. R.13-15. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since March 31, 2008, the date of application.[5] R.13.

At step two, the ALJ found that Claimant has the severe impairments of sinus tarsitis of the right ankle and tibial tendon dysfunction of the left ankle. *Id.* In determining that Claimant's mental impairment "does not cause more than a minimal limitation in her ability to perform basic mental work and is therefore nonsevere", he stated that he considered four functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). R.13 In making this determination, the ALJ relied on Dr. Kuester's Psychiatric Review Technique Form for the Bureau of Disability Determination Services ("DDS") on May 16, 2008. *Id.* The ALJ adopted Dr. Kuester's assessment because it was "consistent with the evidence at the time and that subsequently

---

[4] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally carrying articles such as docket files, ledgers, and small tools, with "a certain amount of walking and standing" occasionally required. 20 C.F.R. 404.1567(a).

[5] Although Claimant states that she had a disability onset date of April 13, 2006, for purposes of SSI, her disability date is determined to be the date of application.

added". *Id*. Dr. Kuester concluded that Claimant only has mild limitations in her ability to perform activities of daily living, noting that she is quite functional, living in an apartment, taking care of three children, taking GED classes, cooking, doing chores, handling finances, and using a computer. *Id*. The ALJ did not address the medical evidence from Dr. Cruz, who diagnosed Delgado with major depressive disorder, an anxiety disorder, ADHD, a cognitive disorder, and PTSD. R.240, 218.

At step three, the ALJ determined that Claimant's feet and ankle impairments do not meet or medically equal the criteria of 1.02 or 1.03 of the Listing of Impairments since she is able to ambulate effectively. R.14. He then found that Claimant has an RFC to perform the full range of sedentary work. *Id*. In making the RFC determination, the ALJ considered Claimant's symptoms to the extent that they could reasonably be accepted as consistent with the objective medical and other evidence as required by 20 C.F.R. 416.929 and 20 C.F.R. 416. 927, as well as Social Security Rulings ("SSRs") 96-2p, 96-4p, 96-5p, 96-6p, 96-7p, and 06-3p. *Id*.

The ALJ followed the prescribed two-step process in considering the Claimant's symptoms. First, the ALJ found that while the Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the RFC assessment. *Id*. Second, the ALJ determined that Claimant's medical records are consistent with the performance of sedentary work. While the MRIs showed sinus tarsi syndrome in the right ankle and tibialis posterior tendon dysfunction in the left ankle, the examination showed no

11

swelling, warmth or redness along with full range of motion in both ankles with no pain. *Id*. The ALJ opined that Claimant's testimony of pain, when compared against objective evidence and evaluated using the factors in SSR 96-7p, was not credible in establishing an impairment to all work. R.14-15.

The ALJ also mentioned under step three of the analysis that, based on the reviewing DDS physicians' opinions, Claimant's impairments did not include a severe mental impairment. R.15. The ALJ stated that the expert evidence was adopted since it was consistent with the objective evidence of record. *Id*.

At step four, the ALJ concluded that Claimant is unable to perform any past relevant work. *Id*. Finally, at step five, he found that there are jobs that exist in significant numbers in the economy that Claimant can perform given her age, education, work experience, and RFC. *Id*. He thus concluded that Claimant is not disabled under the Social Security Act. R.16.

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and

whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Although the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### B. Disability Standard

Disability insurance benefits are available to a claimant who can establish that she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or medically equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once a claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the national economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of her motion: (1) whether the ALJ failed to address evidence regarding Claimant's mental impairments from her treating psychiatrist Dr. Cruz and (2) whether the ALJ erred in finding Claimant less than credible.

### A. The ALJ Failed to Address Evidence of Claimant's Mental Impairments

Regardless of whether there is enough evidence in the record to support the ALJ's decision, the ALJ must articulate the grounds for his decision because we confine our review to the reasons supplied by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)(*See also SEC v. Chenery Corp.,* 318 U.S. 80, 93-95 (1943); *Johnson v. Apfel,* 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)). That is why the ALJ must "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (citing *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001)). While the ALJ need not discuss every piece of evidence in making a disability determination (*Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)), the Seventh Circuit has "consistently recognize[d] that meaningful appellate review requires the ALJ to articulate *reasons* for accepting or rejecting entire lines of evidence." *Gibson-Jones v. Chater*, 1997 U.S. App. LEXIS 7640, at *10 (7th Cir. Ill. Apr. 14, 1997) (emphasis added) (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)).

Error thus exists when there is reason to believe that an ALJ ignored important evidence—as when an ALJ fails to discuss material, conflicting evidence. *Walters v. Astrue*, 2011 U.S. App. LEXIS 21328, at *12 (7th Cir. Ind. Oct. 21, 2011) (citing

*McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)). Otherwise, we cannot confidently assess the agency's rationale and afford the claimant meaningful review. *See Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002).

Here, evidence of Claimant's mental impairments is inconsistent enough that the ALJ should have discussed the conflict so that we would be in a position to assess the Commissioner's rationale and afford Claimant meaningful review. *See Walters*, 2011 U.S. App. LEXIS 21328, at *13-14. Specifically, the ALJ erred under steps two and three of the SSA's five-step disability evaluation process by failing to indicate whether he considered evidence from Claimant's treating psychiatrist Dr. Cruz.

> **1.  The ALJ failed to indicate whether he considered psychiatrist Dr. Cruz's medical records in determining the extent of Claimant's "severe impairments" under step two of the SSA's five-step disability evaluation process.**

The ALJ must determine what weight to give the opinions of the claimant's treating physician (20 C.F.R. § 404.1527) and must provide specific reasons for giving that weight (SSR 96-2p). Thus, as long as the ALJ "minimally articulates his reasons," he may discount a treating physician's opinion regarding the nature and severity of a medical condition if it is inconsistent with that of a consulting physician or other substantial medical evidence. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *see also Schmidt*, 496 F.3d at 842.

In determining Claimant's "severe impairments" under step two, the ALJ relied on Dr. Kuester's Psychiatric Review Technique Form ("PRTF") in concluding that

Claimant's anxiety and depression imposed no more than mild limitations on her activities of daily living. R.13-14. The ALJ failed to even minimally articulate his reasons for not addressing the conflicting opinions of Claimant's treating physician Dr. Cruz, who diagnosed Claimant with major depressive disorder, an anxiety disorder, ADHD, a cognitive disorder, and PTSD. R.240, 218. According to Dr. Cruz, Claimant suffered from difficulties sleeping, psychomotor slowing, an impaired thought process, impaired memory and poor judgment. R.189, 190, 240. Although Dr. Cruz prescribed Ritalin, Ambien, Lunesta, Lexapro, and Wellbutrin (R.189, 190, 218, 240), Claimant's symptoms showed little improvement. R.214.

The ALJ failed to meet the requirement of SSR 96-2p that he provide specific reasons for the weight given to a treating source's medical opinion. He did not address Dr. Cruz's notes, in which it is clear that Claimant's mental condition was at least serious enough to warrant numerous medications and ongoing treatment. Although the ALJ retrieved Dr. Cruz's progress notes after the hearing, there is no indication that the ALJ reviewed that evidence, let alone evaluated its usefulness.

The reasoning provided by the ALJ for adopting Dr. Kuester's assessment was that it was "consistent with the evidence at the time and subsequently added." R.13. However, Dr. Kuester's assessment is not consistent with Dr. Cruz's diagnosis. Dr. Kuester did not have the opportunity consider three significant diagnoses by Dr. Cruz. Dr. Kuester's assessment was done on May 16, 2008. R.199. Dr. Cruz did not diagnose Claimant with PTSD, ADHD, and a cognitive disorder, however, until June 19 and July

24, 2008 and July 9, 2009,[6] respectively. R.218, R.214, R.240-43. Furthermore, this evidence was not even submitted to the ALJ until after the consultants, Dr. Havens and Dr. Arjmand, conducted their reviews on August 6 and 7, 2008 (R.237) and not until after the hearing on January 14, 2010 (*see* R.27). The ALJ failed to articulate how Dr. Cruz's diagnosis of those additional mental conditions was consistent with the opinions of Dr. Kuester, Dr. Havens, and Dr. Arjmand or why he gave more weight to those opinions when those doctors never had the opportunity to consider potential limitations secondary to PTSD, ADHD, and a cognitive disorder or corresponding medical listings. R.237.

ALJs depend on the accuracy of state agency physicians' assessments to evaluate claimants' conditions. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Here, the state agency assessments are incomplete because the state agency consultants did not have Dr. Cruz's evaluation of Claimant's PTSD, ADHD, and a cognitive disorder until after they did their reviews and after the hearing took place.

Furthermore, we find that the ALJ failed to consider the combination of Claimant's physical and mental impairments in determining the level of severity under step two of the SSA's disability evaluation. When a claimant has several medical problems, the ALJ must consider those problems in isolation and in combination to evaluate a claimant's condition as a whole. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005). While it may be the case that a claimant's mental impairments are not severe, an ALJ is required to consider the combined effect of all of the claimant's

---

[6] It is somewhat unclear as to when Claimant's cognitive disorder was diagnosed. The only medical record concerning Claimant's cognitive disorder with a clearly marked date is July 9, 2009. R.240-43.

impairments. 20 C.F.R. § 404.1523. Here, that is precisely the flaw in the ALJ's reasoning. While he found that Claimant's impairments did not include a severe mental impairment, there is no indication that the ALJ considered the cumulative effect of Claimant's alleged mental and physical impairments in determining their level of severity.

Lastly, we note that Claimant was unrepresented at her hearing. The ALJ's duty to develop a full and fair record is heightened when the claimant proceeds without counsel. *Hawwat v. Heckler,* 608 F.Supp. 106, 109 (N.D. Ill 1984). This heightened duty requires the ALJ to "scrupulously and conscientiously. . .probe into, inquire of, and explore for all relevant facts." *Nelms*, 553 F.3d at 1098 (quoting *Smith v. Sec'y of Health, Educ., & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). Although the ALJ is required to "supplement the record by. . .asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records," courts typically defer to the ALJ's judgment unless there has been a "significant omission." *Nelms*, 445 F.3d at 1098. A significant omission is one that is prejudicial to the claimant. *Id.* To demonstrate prejudice, a claimant must "set forth specific relevant facts—such as medical evidence—that the ALJ did not consider." *Id.* "[M]ere conjecture…is insufficient." *Id.*

Here, in light of the fact that Claimant was unrepresented, the ALJ had a heightened duty to develop a full and fair record. The ALJ's failure to address any of the records from Dr. Cruz and question Claimant or her sister-in-law about the severity of Claimant's mental health amounts to a significant omission. The ALJ, thus, failed to

develop the record in this important respect, and this case must be remanded for further

proceedings consistent with this Memorandum Opinion.

> **2.    The ALJ failed to indicate whether he considered evidence of Claimant's mental impairments in determining Claimant's RFC under step three of the SSA's five-step disability evaluation process.**

An ALJ makes an RFC determination by weighing all of the relevant evidence in

the record.  20 C.F.R. § 404.1545(a)(1); SSR 96-8p.  The ALJ must "consider the

combined effects of all of the claimant's impairments, even those that would not be

considered severe in isolation."  *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).  In

cases in which "impairments may not on their own be disabling, that would only justify

discounting their severity, not ignoring them altogether." *Id*.

The ALJ erred in determining Claimant's RFC in step three of the SSA's five-step

disability evaluation process by failing to consider the combined effects of all of

Claimant's impairments.  The ALJ merely states, "reviewing DDS physicians concluded

on May 16 and 17, 2008 that the claimant's impairments did not include a severe mental

impairment."  R.15.  The ALJ explained that the expert evidence was adopted "since it is

consistent with the objective evidence of record."  *Id*.  Stating that Claimant's alleged

mental impairments are not severe does not sufficiently explain how they potentially

affect her RFC.  In determining Claimant's RFC, the ALJ failed to indicate whether he

considered evidence of Claimant's alleged mental impairments (which need not be

severe) in combination with Claimant's physical limitations to determining her level of

functionality.[7]  While the ALJ may be correct in determining that Claimant's medical records concerning sinus tarsi syndrome in the right ankle and tibialis posterior tendon dysfunction in the left ankle are "consistent with the performance of work which does not require prolonged periods of standing and/or walking—such as sedentary work" (R.14), by failing to consider evidence of Claimant's alleged mental limitations, it does not appear that the ALJ considered the potential cumulative effect of Claimants physical and mental limitations.

There is no evidence to suggest that the possible aggravating effects of Claimant's mental impairments on her ability to work were considered by any doctor, other than perhaps Dr. Cruz, whom the ALJ does not reference in his opinion. It is thus impossible to conduct a meaningful review of the ALJ's decision.  On remand, the ALJ should evaluate whether Claimant's alleged mental impairments, in combination with her severe physical impairments, affect her ability to work.

Again, as noted above, Claimant was unrepresented.  To fulfill his heightened duty to fully and fairly develop the record, the ALJ is required to "supplement the record by…*asking detailed questions*, ordering additional examinations, and contacting treating physicians and medical sources to request additional records."  *Nelms*, 445 F.3d at 1098 (emphasis added).

---

[7] The Commissioner contends that the ALJ properly determined that Dr. Cruz's treatment notes were not useful because he never stated that Claimant needed workplace accommodations. Def brief, at 9.  Dr. Cruz never saw Claimant for a functional employment evaluation, however. Thus, the absence of notes on functional limitations or necessary workplace accommodations is not necessarily evidence of Dr. Cruz's opinion that Claimant did not require functional limitations. It is possible that Dr. Cruz never even considered functional limitations or accommodations.

Here, Claimant attended a brief hearing before the ALJ. Claimant informed the ALJ at the beginning of the hearing that notes from her psychiatrist Dr. Cruz were missing from the medical records. R.25. The ALJ thus was aware of the fact that Claimant had been seeing a psychiatrist and requested the records, but failed to question Claimant about her alleged mental limitations and their potential effects on her functionality. When Claimant stated that she not only was struggling with depression but anxiety as well, the ALJ asked what medications she was taking and their side effects, but did not inquire as to how either of those alleged mental impairments had an impact on Claimant's functionality. R.32, 33. Nor did the ALJ ask Claimant's sister-in-law—who testified at the hearing that Claimant's pain in her feet as well as her depression were getting worse (R.36)—about the nature or limiting effects of Claimant's alleged mental health problems. The ALJ's decision not to question Claimant or her sister-in-law about the possible effects of Claimant's mental health on her daily functioning amounts to a significant omission. The ALJ thus failed to develop the record in this important respect.

When a decision on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) (citing *O'Connor v. Sullivan*, 938 F.2d 70, 73-74 (7th Cir. 1991)). We are not satisfied of that here. Based on the record before this Court, we cannot say that, if the cumulative effect of Claimant's ailments were considered in determining her RFC, no reasonable trier of fact could have come to a different conclusion. *Walters*, 2011 U.S. App. LEXIS 21328, at *15 (citing

*O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-620 (7th Cir. 2010) (limiting claimant to repetitive tasks with simple instructions did not account for claimant's depression-related problems); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (limiting claimant to unskilled work did not account for claimant's mood swings)).

While it may be true that the ALJ considered the potential cumulative effects of Claimant's physical and psychological limitations, the ALJ did not articulate that reasoning, leaving the Court to speculate as to how he reached his conclusion. Without a logical bridge to support the ALJ's finding that Claimant was not disabled, it is impossible to conduct a meaningful review.

At this point we are not weighing the evidence, or even making sure that the ALJ's ultimate decision is supported by substantial evidence. Rather, we are making sure that the ALJ considered the evidence. *Walters*, 2011 U.S. App. LEXIS 21328, at *17 (citing *McKinzey*, 641 F.3d at 891-92; *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). The evidence in this case is conflicting, and an ALJ who considers Dr. Cruz's report may or may not decide to award benefits.

In order to affirm the ALJ's decision in this case, the Court would have to engage in post-hoc rationalizations to explain the ALJ's treatment of evidence when that treatment is not apparent from the ALJ's decision itself. Such post-hoc rationalizations are not permitted. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)). Thus, a remand for further explanation is warranted based on the ALJ's

failure to articulate his reasons for rejecting an entire line of evidence regarding Claimant's alleged mental impairments.

On remand, the ALJ should address evidence concerning Claimant's mental limitations in determining the extent of Claimant's "severe impairments" and her residual functional capacity under steps two and three of the SSA's disability evaluation process.

### B. The ALJ failed to properly analyze Claimant's credibility

The ALJ is in the best position to evaluate the credibility of a witness. *Collins v. Barnhart*, 533 F.Supp.2d 809, 819 (N.D. Ill. 2008) (citing *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)). The ALJ's evaluation, however, must contain "specific reasons" for a credibility finding (SSR 96-7p), and it must be supported by substantial evidence. *Myles*, 582 F.3d at 676 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)). While the ALJ need not list out the seven required factors under SSR 96-7p (*Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003)), he may not simply "recite the factors that are described in the regulations." SSR 96-7p. The ALJ's credibility determination must be "sufficiently specific" to make clear to a claimant and subsequent reviewers the weight given to claimant's statements and the reasons for the weight given. SSR 96-7p. *See Steele*, 290 F.3d at 942 ("The ALJ's credibility assessment does not suggest how Steele could still perform light and sedentary work despite his reported problems with depression, walking and lifting, and seizures -- which when considered cumulatively left the vocational expert unable to identify any jobs for Steele to perform."). Specific documentation of the reasoning behind the ALJ's conclusions is necessary to give a

claimant a full and fair review of his or her claim and to ensure a well-reasoned decision. *Id.*

Here, the ALJ's evaluation of Claimant's credibility does no more than cite SSR 96-7p. The ALJ broadly stated that he evaluated Claimant's testimony "against the objective evidence and…using factors in SSR 96-7p." R.14. He opined that her testimony was only credible in "establishing limitations to sedentary work but not an impairment that would preclude all work, given the objective findings along with the use of medication, pursuit of treatment, and activities that include going to school to a get a GED and being able to go to the store alone." R.14-15. This discussion is inadequate for two reasons.

First, in assessing Claimant's credibility, the ALJ only referenced two daily activities, one of which he incorrectly characterized. SSR 96-7p provides that an ALJ must consider certain factors when evaluating credibility, including daily activities. "Merely mentioning some of the factors, without a meaningful discussion is inadequate." *Castrejon v. Apfel*, 131 F.Supp.2d 1053, 1057 (E.D. Wis. 2001). Here, the ALJ merely mentioned two daily activities: going to school to get a GED and being able to go to the store alone. R.15. Furthermore, he erred in misstating Claimant's testimony about her ability to go to the store independently. In fact, Claimant testified that she is not able to go to the store unless her sister-in-law accompanies her. R.34-35. Merely mentioning two activities—especially while misstating the evidence relating to one of them—does not sufficiently support the ALJ's finding that Claimant's allegations of pain are not credible.

25

Second, the ALJ failed to explain how Claimant's activities are inconsistent with her allegations of pain, as required by SSR 96-7p. It is plausible for Claimant to experience the symptoms she described, while still being able to attend classes and, with the assistance of relatives, shop and minimally care for her children. *See Gibson-Jones*, 1997 U.S. App. LEXIS 7640, at *11 (holding that the ALJ had to more specifically articulate his reasons for believing that the applicant's testimony was contradictory and inconsistent).

Furthermore, SSR 96-7p mandates that whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the credibility of a claimant's testimony based on the record *as a whole*. SSR 96-7p (emphasis added). In this case, the ALJ found Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms not credible because they were "inconsistent with the above residual functional capacity assessment." R.14. This boilerplate recital (*Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) does not make it clear that the ALJ took into consideration the record as a whole, especially Dr. Cruz's records.

Accordingly, the ALJ did not sufficiently explain why he rejected Claimant's testimony regarding her subjective complaints of pain. The ALJ did not specifically point to inconsistencies between Claimant's alleged pain and evidence in the record that would lead him to reach that conclusion. Because the ALJ has not provided us with specific reasons for rejecting Claimant's testimony, we are left without a basis to uphold the ALJ's credibility determination. *See Gibson-Jones*, 1997 U.S. App. LEXIS 7640, at

*10 (citing *Herron*, 19 F.3d at 336).  Since meaningful appellate review at this juncture is impossible, it is necessary to remand the case to the ALJ so that he may better articulate the grounds for his decision.

## IV. CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, Claimant's motion for summary reversal or remand [Dkt.#19] is granted in part and denied in part, and this case is remanded for further proceedings consistent with this Opinion.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   March 7, 2012